FILED
2011 Mar-11  PM 05:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| EDWARD R. LANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | CV-11-BE-0883-M |
| CENTRAL ALABAMA COMMUNITY ) | |
| COLLEGE and DR. STEVE FRANKS ) | |
| ) | |
| Defendant. ) | |

## DEFENDANTS' MOTION TO DISMISS AND SUPPORTING BRIEF

Defendants Central Alabama Community College and Dr. Steve Franks (collectively the "College" or "CACC") move this Court, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the case for failure to state a claim. In support of their motion, the College states and shows as follows:

### STATEMENT OF FACTS[1]

Plaintiff Edward R. Lane filed the current suit alleging witness intimidation and retaliation by his former employer, the College, and its president, Dr. Franks. In essence, Lane claims that Franks, as president of CACC, conspired to, and did,

---

[1] In accordance with the applicable standard of review, CACC assumes Plaintiff's factual allegations are true for purposes of this motion, subject to a full reservation of CACC's rights to admit or deny particular factual allegations, contest liability as to each of Plaintiff's claims, and raise all available affirmative defenses at a later date if necessary.

terminate him in retaliation for testifying against former member of the Alabama House of Representatives Sue Schmitz in her criminal trial. Lane has asserted claims under Ala. Code § 36-26A-3, the State Employee Protection Act (Count I); federal First Amendment retaliation (Count II) and conspiracy to injure witness for testifying under 42 U.S.C. § 1985 (Count III). (*Id.*)

These claims are, frankly, outlandish. Lane's complaint deals in insinuation and innuendo rather than fact. Without any factual allegations showing a conspiracy of any kind, Lane concludes that he was the victim of a plot hatched by friends of Schmitz to retaliate against him for testifying against her.

A substantial portion of the Complaint is devoted to narrating Lane's alleged achievements during his brief tenure as the Director of the former Community Intensive Training Program for Youth ("C.I.T.Y."), which was administered by CACC. (Doc. 1 ¶¶ 6-9, 22-27.) These allegations are largely irrelevant to the issue of whether there was a conspiracy to terminate Lane for testifying against Schmitz.

Lane also dedicates a significant portion of the Complaint to detailing his alleged discovery that Schmitz (a subordinate employee in the C.I.T.Y. program) was not performing her job duties, and the animosity between him and Schmitz that followed. (Doc. 1 ¶¶ 10-21.) None of these allegations state—or even imply—that Dr.

Franks or CACC were sympathetic towards Schmitz, or took any action against Lane to thwart his alleged efforts to deal with a non-performing subordinate. (*See id.*)

The Complaint alleges that Lane testified before a grand jury regarding Schmitz in 2006 and twice during her federal criminal trials in August 2008 and February 2009. (Doc. 1 ¶¶ 31-32.) Lane does not allege any acts or omissions by Franks or CACC in 2006 or 2008 to prevent or interfere with Lane's testimony on those occasions. (*Id.*)

Further, the Complaint alleges no overt acts of harassment, intimidation or retaliation against him by CACC, Franks, or anyone else, with respect to his testimony in the Schmitz proceedings. (*See id.* ¶¶ 28-49.) The only allegedly wrongful act or omission stated by Lane was a termination letter he allegedly received in January 2009 from Dr. Franks and CACC. (*Id.* ¶ 41.) Oddly, Lane concedes that "Franks also sent letters of termination to twenty-eight other employees of the C.I.T.Y. program." (*Id.* ¶ 42.) Lane claims that Franks later "rescinded the termination" of the other employees but not him. (*Id.* ¶ 44.) The stated reason for termination was "budgetary shortfalls[.]" (*Id.* ¶ 43.)

Lane arrives at the conclusion that the termination letter was retaliatory based on a series of broad, generalized statements and assumptions by which he attempts to link Schmitz to Dr. Franks. This begins with Lane's claim that "as a member of the legislature, Schmitz had been on the [a] committee with the Vice President of [CACC], Betty Carol Graham[.]" (*Id.* ¶ 36.) Lane next alleges that Graham "wielded a great deal

3

of influence" within CACC. (*Id.* at ¶¶ 37-39.) Lane finds support for this sweeping conclusion by stating that Graham has "a building named after her," and she "wielded influence over how much money" CACC received from the legislature. (*Id.*) Further, "Graham, upon information and belief, was also friends with Schmitz." (*Id.* ¶ 40.)

Of course, Graham has not been named as a defendant to this suit, and did not allegedly terminate Lane. Lane offers a broad, conclusory[2] conspiracy theory that "Graham used her influence ... to have Franks ... terminate Lane in retaliation for his testimony against Schmitz." (*Id.* ¶ 46.) Lane provides no further explanation or allegations as to how Graham allegedly used her influence or had Franks terminate Lane. (*Id.*) Thus, for instance, the Complaint is deafeningly silent as to any allegation of any communication between Graham and Franks about Schmitz, Lane's investigation or termination of Schmitz, Lane's testimony, Lane's termination, or any other relevant matter. (*Id.*) Nor does Lane allege any such communication by anyone else associated with CACC about these matters. (*Id.*) One is forced to speculate, along with Lane, regarding how—or if—the alleged conspiracy occurred.

---

2 The remainder of the factual allegations in the Complaint deal with alleged publicity of Lane's testimony in the criminal trial, and Franks' alleged knowledge of the criminal investigation and trial. (Doc. 1 ¶¶ 33, 34, 47-49.)

4

# ARGUMENT

## A. Standard of Review

Fed. R. Civ. P. 8 requires a plaintiff to set forth "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). In recent years, the Supreme Court has revised its interpretation of these pleading requirements to clarify that Rule 8 "demands more than ... labels and conclusions [or] naked assertions devoid of further factual development." *Iqbal*, 129 S.Ct. at 1939 (internal citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Facts that are "merely consistent" with a defendant's liability will not suffice. *Iqbal*, 129 S.Ct. at 1949.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and which does not require the Court to "infer [...] the mere possibility of misconduct[.]" *Id.* (citations omitted). "Rule 8 [...] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* Consideration of a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citations omitted).

B.  **Lane's Complaint is a textbook example of the pleading abuses which the Supreme Court sought to remedy in *Iqbal* and *Twombly*.**

Lane's claims—all of which are based on the underlying allegations of retaliation and conspiracy[3] to retaliate against him for testifying in the Schmitz proceedings—should be dismissed. He fails to state a claim upon which relief can be granted under minimum federal pleading standards.

A plaintiff's obligation under *Federal Rules of Civil Procedure* 8 and 12(b)(6) is to "provide the grounds of [his] entitlement to relief" by asserting factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

---

[3] In order to make out a prima facie case for each of the claims asserted by Lane in his Complaint, he must show either <u>retaliation</u> or <u>conspiracy</u>. The elements of his claims are as follows.

The elements of a State Employee Protection Act violation (Count One) are summarized as follows: 1) a supervisor **must not discharge, demote, transfer or otherwise discriminate**; 2) against a state employee; 3) regarding the state employee's compensation, terms, conditions, or privileges of employment; 4) **if the state employee reports**, under oath or in an affidavit; 5) **a violation** of law, regulation, or rule to a public body. Ala. Code § 36-26A-3 (emphasis added).

The elements of a First Amendment **retaliation** claim (Count Two) are as follows:

> (1) the employee's speech i[s] [sic] on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the **employee's speech** played a **'substantial part' in the employer's decision to demote or discharge** the employee.

*Akins v. Fulton Co., Ga.*, 278 Fed. Appx. 964, 970 (11th Cir. 2008) (quoting *Battle v. Bd. of Regents*, 468 F.3d 755, 759-60 (11th Cir. 2006)) (emphasis added). *See also Rodin v. City of Coral Springs, Ga.*, 229 Fed. Appx. 849, 851 (11th Cir. 2007).

The elements of a 42 U.S.C. § 1985(2) violation (Count Three) are summarized in relevant part as follows: 1) two or more persons; 2) **conspire to injure**; 3) a party or witness testifying in any matter pending in a U.S. court; 4) **for having so attended or testified**. 42 U.S.C. § 1985(2) (emphasis

6

*Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). Rule 8 "demands more than ... labels and conclusions [or] naked assertions devoid of further factual development." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted); *see also Twombly*, 550 U.S. 544. Facts that are "merely consistent" with a defendant's liability will not suffice. *Iqbal*, 129 S. Ct. at 1949.

None of the allegations of retaliation or conspiracy to retaliate against Lane for testifying in the Schmitz proceedings rise above the level of speculation. Lane's Complaint is devoid of *any* factual allegations of conspiracy or retaliation other than the self-serving, conclusory statement that "Graham used her influence ... to have Franks ... terminate Lane in retaliation for his testimony against Schmitz." (*Id.* ¶ 46.) Even assuming she "wielded a great deal of influence," as alleged [*id.* ¶ 37], **how Graham might have "used her influence" is left entirely to the imagination.** (*Id.* at 37-46.) Lane states no allegations of any communication between Graham and Franks on the subjects of: Schmitz, Lane's investigation or termination of Schmitz, Lane's testimony, Lane's termination, or any other relevant matter. (*Id.*) Nor does Lane allege any such communication by anyone else associated with CACC about these matters. (*Id.*)

Weighing the sufficiency of a pleading is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129

---

added).

7

S. Ct. at 1949. In the current context, Lane has made gravely serious accusations of federal witness tampering and intimidation based upon nothing more than rank speculation regarding alleged misuse of "influence ... to have Franks" terminate Lane. (Doc. 1 ¶ 46.) These "[t]hreadbare recitals of the elements of [the] cause[s] of action, supported by mere conclusory statements do not suffice." *Id.* (citing Twombly, 550 U.S. at 555.) Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" a motion to dismiss is due to be granted. *Iqbal*, 129 S. Ct. at 1950.

The allegations in the current complaint are strikingly similar to (but weaker than) those which the Supreme Court rejected as insufficient to state a claim for relief in *Twombly* and *Iqbal*. *See id.*; *Twombly*, 450 U.S. at 564-70. In *Twombly* the Court rejected conspiracy allegations which were simply recitals of a "contract, combination or conspiracy" and an alleged "agree[ment] not to compete with one another[.]" *Id.* at 565 n. 9. The Court held that those allegations, even when considered along with the plaintiffs' factual allegations of similar parallel conduct by the two defendants, were insufficient to state a claim for conspiracy. *Id.*; *see also Iqbal* 129 S. Ct. at 1950 (discussing holding in *Twombly*). As in *Twombly*, the complaint in this case contains no direct allegations of any agreement—or even any communication between—the alleged conspirators (presumably Graham and Franks). Lane's conclusory allegations

8

regarding Graham somehow "hav[ing]" [Doc. 1 ¶ 46] Franks terminate him are clearly deficient to raise the claim for relief above the speculative level. *See id.*

In *Iqbal*, the Court held that allegations that defendants "knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to harsh conditions were "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951. Further, bare assertions that the defendants were "architects" or "instrumental" in adopting alleged wrongful policies were held to be "bare assertions" and "nothing more than a formulaic recitation of the elements of the constitutional discrimination claim" presented in that case. *Id.* (*quoting Twombly*, 550 U.S. at 555). Lane's allegations of conspiracy and retaliation are similarly formulaic and not entitled to any assumption of truth.

Additionally, in strikingly similar circumstances, many courts have held that plaintiff failed to state a claim for conspiracy. *See, e.g., Keady v. Nike, Inc.*, 116 F. Supp. 2d 428, 434 (S.D.N.Y. 2000), *aff'd in part, vacated in part*, 23 Fed. Appx. 29 (2d Cir. 2001) (allegations that athletic apparel manufacturer pressured private university to discredit employee and to take other steps to stop him from speaking against manufacturer, and to force him to wear manufacturer's logo clothing or resign, were too vague to support civil rights conspiracy claim); *Nielson v. Legacy Health Sys.*, 230 F. Supp. 2d 1206, 1209 (D. Or. 2001) (dismissing plaintiff's conspiracy claims where he "fail[ed] to provide specific facts showing how any of the . . . defendants colluded with a state official to deprive plaintiff of his constitutional

rights"); *Local 749, AFSCME, Council 4, AFL-CIO v. Ment*, 945 F. Supp. 30, 35 (D. Conn. 1996) ("Since plaintiff's allegations of conspiracy are vague and conclusory, we grant defendants' motion to dismiss"); *Eidson v. Arenas*, 910 F. Supp. 609, 613-14 (M.D. Fla. 1995) (dismissing plaintiff's conspiracy claim where he "failed to allege the nature of each [d]efendant's involvement in any conspiracy"); *Boykin v. Bloomsburg Univ. of Pennsylvania*, 893 F. Supp. 409, 418 (M.D. Pa. 1995) (finding insufficient plaintiffs' conspiracy claim where it was only supported by "suspicions, speculation, and feelings"). The conspiracy allegation is common to all claims in this case because it is the only factual allegation of retaliation, i.e. Dr. Franks' only alleged intention or motive to retaliate against Lane is by virtue of Graham using her "influence." (See Doc. 1 ¶¶ 36-49.) For this reason, Lane's failure to plead a conspiracy is fatal to all claims and requires dismissal of the suit.

In conclusion, this case presents a textbook example of the type of pleading abuses that the Court in *Iqbal* and *Twombly* sought to prevent. Especially in light of the grave allegations stated in this case, Lane cannot come to court armed with nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555). Lane's conclusory statements of retaliation and conspiracy, which form the basis for all of his legal claims in this suit, are insufficient to raise any right to relief above the purely speculative level. Accordingly, the case should be dismissed.

## CONCLUSION

Under *Iqbal* and *Twombly*, Lane's highly speculative allegations of conspiracy and retaliation do not state a claim upon which relief can be granted, and the case should be dismissed.

Respectfully submitted,

/s/ Stephen N. Fitts, III
MARK T. WAGGONER
STEPHEN N. FITTS, III
Attorneys for Defendant

**OF COUNSEL:**
HAND ARENDALL LLC
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 324-4400 Telephone
(205) 322-1163 Fax

## CERTIFICATE OF SERVICE

I do certify that on March 11, 2011, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system and request the Court to serve the same electronically, on the following counsel:

John Saxon, Esq.
2119 3rd Avenue North
Birmingham, AL 35203

/s/ Stephen N. Fitts, III
OF COUNSEL