FILED
2012 Jun-05  PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| EDWARD R. LANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 4:11-cv-00883-KOB |
| CENTRAL ALABAMA COMMUNITY | ) | |
| COLLEGE and DR. STEVE FRANKS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Court must now determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Defendants respectfully submit that this is that "one-sided" case and summary judgment is due to be entered in their favor.

From the filing of his Complaint through his response brief, Lane's claims have been based on nothing more than "vapid conjecture[,]" insufficient to overcome summary judgment. *See Sabatier v. Suntrust Bank*, 2008 WL 108796, at *13 (S.D. Fla. Jan. 4, 2008) (citing *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989)). Other than Lane's conclusory and speculative allegations, there is a dearth of record or legal authority to support his claims of First Amendment

retaliation and violation of the State Employees Protection Act.[1]   He has not established a *prima facie* case that he was terminated in January 2009 on account of his testimony at Schmitz's trial in August 2008, and, even if he had, he has failed to rebut Defendants' showing that they would have terminated him anyway. He has also failed to overcome Defendants' immunity arguments.   There are no genuine disputes as to any material fact, and summary judgment is due to be granted in Defendants' favor on all claims.

## I.   Response to Lane's Statement of Additional "Undisputed Facts."[2]

15.   Mischaracterization of the cited testimony.

16.   Mischaracterization of the cited testimony.

21.   Defendants are unable to determine if this is a disputed fact, as the deposition pages cited do not support the proposition at issue; therefore, Defendants dispute this fact, but state that, regardless, it is irrelevant.

22.   Disputed.  Lane testified that he could not remember exactly what McGuirt said to him. (Lane Dep. 186:1-187:1.)  Even so, there is no dispute that

---

[1] Lane does not make any substantive arguments with respect to this claim, except to state that the facts supporting the claim are the same as the facts supporting his First Amendment retaliation claim. (*See* Doc. 38, p.42.)  Therefore, Defendants have not addressed the claim again, as they have already done so. (*See* Doc. 34, p.29.)

[2] Omitted paragraphs are undisputed for purposes of summary judgment, but Defendants reserve the right to dispute any and all factual allegations, if necessary, at trial.  Most of these alleged facts are redundant, irrelevant, or immaterial to the summary judgment issues at hand.  For example, Lane's argument that Schmitz resented her termination by Lane is irrelevant, since Lane does not dispute that Schmitz had nothing to do with Lane's termination. (*See infra*, Sec. VII.)  And, the headings in Lane's Additional "Undisputed Facts" are not evidence. *See Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).

McGuirt had nothing to do with Lane's termination, so her comments to Lane are irrelevant.

28.     Admitted that Schmitz testified as stated.  However, Defendants state that Schmitz's testimony about what she said to Foley is irrelevant, as Lane does not dispute that Schmitz was not involved in Lane's termination. (*See infra*, Sec. VII.)

33.     Admitted, except that the date is incorrect.  The grand jury proceeding was held on November 13, 2006. (*See* Doc. 38, p.11, ¶ 34 (stating the correct date); Lane Dep. 188:4-18.)

34.     Disputed.  There is nothing in the cited testimony that Lane testified about how Schmitz acquired her job.  Regardless, the testimony is irrelevant to any summary judgment issue.

52.     Disputed.  Franks was hired as President in January 2008, a fact that Lane does not dispute. (*See* Doc. 34, ¶ 11.)  Lane did not begin reporting to Franks until November 20, 2008.

53.     Admitted, but clarified that Franks testified that he met multiple legislators, not just Schmitz. (Franks Dep. 37:13-21 ("So when the legislature started, I went down to meet legislators.  And she was one of the ones I met.").)

58.     Admitted, except that Lane was terminated on January 9, which is undisputed. (*See, e.g.*, Franks Dep. Ex. 2.)

61.   Admitted that Franks sent out the letters on January 9, 2009. Defendants dispute Lane's characterization that Franks did not at that time believe the employees to be probationary, and Lane has cited no part of the record for this characterization.   Rather, it is the argument of counsel, not evidence. *See Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).

62.   Admitted, except that the letters were sent on January 29, 2009.

67.   Admitted.   However, Defendants also point out that Lane does not dispute that Palmer was serving as <u>both</u> regional coordinator and interim director, which resulted in a cost-savings to CACC, because Palmer was performing two jobs for one salary. (*See* Doc. 34, ¶¶ 81-85.)   In fact, it is undisputed that Palmer's salary was the same as Lane's, <u>even though Palmer had additional responsibilities as regional coordinator that Lane did not have</u>. (*See id.*, ¶ 85.)

79.   Mischaracterization of the cited responses.   Regardless, whether or not Franks consulted with Byrne is not an issue of material fact.

80.   Admitted that Lane testified as stated, but Lane's subjective beliefs about his termination are insufficient to create a genuine issue of material fact on summary judgment.[3] *See Johnson v. Albright*, 2009 WL 4067220, at *10 (M.D. Ala. Nov. 20, 2009) ("[Plaintiff] offers only her conclusory allegations of ultimate fact that the defendants retaliated against her for exercising her constitutional

---

[3] Similarly, Lane's citation to his own conclusory testimony to dispute Defendant's Statement of Facts (*see, e.g.*, Doc. 38, p.2, ¶ 39) is likewise insufficient to overcome summary judgment.

rights.  These allegations are insufficient to defeat summary judgment.") (granting summary judgment in favor of defendants on First Amendment retaliation claim); *see also, e.g.*, *Alvarez v. Royal Developers, Inc.*, 610 F.3d 1253, 1266-68 (11th Cir. 2010); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) ("[Plaintiff]'s conclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment."); *Sabatier*, 2008 WL 108796, at *13 ("Plaintiff's subjective belief and vapid conjecture that he has been the victim of retaliation are insufficient to [overcome summary judgment].").

82.     Admitted, with the addition that Franks also testified that Lane never discussed the content of his testimony with Franks. (Franks Dep. 42:6-13.)  Franks did not follow the trials. (*Id.* at 42:14-43:2.)

85.     Admitted that Lane testified as stated, but Lane's subjective beliefs about his termination are insufficient to create a genuine issue of material fact on summary judgment. *See, e.g.*, *Johnson*, 2009 WL 4067220, at *10; *see also, e.g.*, *Alvarez*, 610 F.3d at 1266-68; *Holifield*, 115 F.3d at 1564 n.6; *Sabatier*, 2008 WL 108796, at *13.

86.     Mischaracterization of the cited testimony.  Regardless, this testimony is irrelevant because, again, Lane does not dispute that Schmitz was not involved in Lane's termination. (*See infra*, Sec. VII.)

88.    Mischaracterization of the cited testimony.  Regardless, this alleged fact is irrelevant to any summary judgment issue.

89.    Admitted that Franks testified as stated in answer to a question whether he had ever had <u>any</u> discussions with Hubbert about Lane.  However, Lane misconstrues this testimony in his brief and conveniently ignores Franks' testimony when specifically asked whether he spoke with Hubbert about his decision to terminate Lane:

Q:    Did you talk to Dr. Hubbard [sic] about that decision?

A:    <u>No.</u>

(Franks Dep. 36:16-18, emphasis added.)

Franks also testified:

Q:    Did anybody instruct you to fire Edward Lane?

A:    No.

Q:    Did anybody suggest to you he should be fired?

A:    No.

(*Id.* at 56:18-23; *see also id.* at 25:1-4 (Franks testified that he and Hubbert never talked about any C.I.T.Y. personnel in particular).)  Further, when asked whether he had ever had any discussions with Hubbert about Schmitz, Franks responded: "No." (*Id.* at 25:17-19.)

92.    Disputed as speculative and mischaracterization of the cited testimony.

93.    Mischaracterization of the cited testimony.   C.I.T.Y. was not "reformed."   Lane does not dispute that C.I.T.Y. ceased to exist in September 2009. (*See* Doc. 34, ¶ 86.)

94.    Mischaracterization of the cited testimony.   C.I.T.Y. was not "reformed."   (*See id.*)

95.    Disputed to the extent Lane implies that C.I.T.Y. continued to exist.

## II.    Several of Lane's allegedly disputed issues of material fact are not well-founded.

Lane disputes that Franks made a financial decision to terminate Lane and other probationary employees and further disputes Franks' motivation for rescinding some terminations.   But Lane cites only his own testimony about his subjective beliefs as to why he was terminated and why his termination was not rescinded. (*See, e.g.*, Doc. 38, p.2, ¶ 39.)   However, as discussed above, Lane's subjective beliefs regarding Franks' decisions are insufficient to overcome summary judgment. (*See supra*, pp. 4-5); *see, e.g.*, *Johnson*, 2009 WL 4067220, at *10; *Sabatier*, 2008 WL 108796, at *13.   And, there is no other evidence of retaliatory animus on Franks' part. (*See infra*, Sec. VII); *O'Bryant v. Finch*, 637 F.3d 1207, 1219-20 (11th Cir. 2011) (affirming summary judgment where plaintiff failed to present evidence of retaliatory animus on the part of any defendant).

Lane also disputes that Franks decided to rescind some terminations after those terminations took place. (*See* Doc. 38, p.3, ¶ 47.)  Lane's implication that Franks knew he was going to rescind some terminations at the time of the terminations is unsupported by the record.  The testimony is undisputed that it was brought to Franks' attention <u>after</u> the terminations took place that there might be an argument pertaining to the probationary service of the low-level employees (unlike Lane) who were terminated. (*See* Franks Dep. 68:23-70:5, 92:9-93:14.)  Moreover, Lane does not dispute that "'[t]he reason that other employees were recalled had to do with an ambiguity that they argued about whether they were C.I.T.Y. Program employees or College employees and about whether they had been told that they would be subject to a six-month (as opposed to three-year) probationary period.'" (Doc. 34, ¶ 49.)  As such, his argument in brief that "[a] jury could infer that Franks was aware of this possible distinction before ever implementing the reduction in force" should be disregarded as unsupported and directly contradicted by actual record testimony, as opposed to argument of counsel. (*See* Doc. 38 pp. 38-39.)  There is no <u>genuine</u> dispute that Franks made the rescission decision after the reduction in force and that this was not a complicated pre-meditated scheme to get rid of Lane. (*Cf.* Doc. 38 pp. 38-39 *with* Franks Dep. 68:23-70:5, 92:9-93:14.)  Further, Lane's dispute of Paragraph 40 that "Franks testified at his deposition that

26 of the 28 employees were not probationary, hence the rescission of their termination" (Doc. 38, pp. 2-3) mischaracterizes the actual record testimony.

Finally, Lane's dispute of his unequivocal testimony on page 231 of his deposition (*see id.*, p.4, ¶ 57) is disingenuous. His testimony was clear, in response to a simple and direct question that was not objected to, that he did not "have any reason to believe that [Franks] was being less than honest and truthful with [him] with everything that he said[.]" (Lane Dep. 231:9-22.)

**III.   CACC is completely immune from Lane's claims.**

Well-settled case law provides that, as an instrumentality of the State of Alabama, CACC enjoys complete immunity pursuant to the Eleventh Amendment of the United States Constitution. For example, in *Wright v. Chattahoochee Valley Community College*, 2008 WL 4877948 (M.D. Ala. Nov. 12, 2008), the Middle District of Alabama held, with respect to another state community college: "[A] suit in which [a] State or one of its agencies . . . is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies <u>regardless of the nature of the relief sought</u> . . . ." *Id.* at *3 (citations and quotations marks omitted) (emphasis added) (granting summary judgment); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (same). Lane's argument that CACC is not immune from his claim for prospective equitable relief (*see, e.g.*, Doc. 38, p.25) is without merit, and CACC is due to be dismissed.

**IV.    Lane concedes that any claim for monetary damages against CACC or Franks in his official capacity is barred, and, regardless, the prospective relief he seeks is impermissible.**

Lane concedes that he cannot recover monetary damages against CACC and Franks in his official capacity, but argues that he is still entitled to prospective equitable relief. (*See, e.g.*, Doc. 38, p.25.) Lane's argument misstates the law. The prospective relief Lane seeks does not relate to "a continuing violation of federal law by [D]efendants[, but to] discrete acts that occurred" in 2009, and thus is not allowed. *See, e.g., Pears v. Mobile County*, 645 F. Supp. 2d 1062, 1078 n.22 (S.D. Ala. 2009); *see also Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). The law does not allow official capacity suits "where prospective injunctive relief is sought solely to remedy a one-time past deprivation" of the federal right at issue, as in this case where it is clear that the "prospective" injunctive relief Lane requests is sought solely to remedy an alleged past deprivation of his federal rights when he was terminated from CACC three years ago. *See Pears*, 645 F. Supp. 2d at 1078 n.22. Lane's argument that any and all prospective relief is allowed under § 1983 is wrong; rather, prospective relief "sought solely to remedy a one-time past deprivation" of the federal rights at issue — the exact type of relief Lane requests here — is precluded, and CACC and Franks in his official capacity are immune. *See, e.g., id.*

Lane's official capacity claim is also barred because the equitable relief he seeks, namely, reinstatement (*see* Doc. 38, p.25), unquestionably "'implicates special sovereignty interests'" that would interfere with CACC's ability to make decisions regarding its staff. *See Summit*, 180 F.3d at 1337 ("[I]f prospective relief would invade a state's sovereignty as much as an award of money damages would, the action will be barred.") (citation omitted).

## V.   Franks is also immune in his individual capacity.

The standard for sovereign immunity for a State official in his individual capacity is not whether money damages are recoverable (*see* Doc. 38, p.26), but whether the State is the real, substantial party in interest: "'The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain . . . or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'" *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 n.3 (11th Cir. 1998) (citation omitted) (emphasis added). Here, all actions with respect to Lane were taken pursuant to Franks' authority as President of CACC and the relief he is seeking, including reinstatement, relates to Franks' official position as President and to an attempt by Lane to have this Court compel CACC to hire him back. The Middle District of Alabama has dismissed an individual capacity claim against a college President, like Franks, on similar grounds, and this Court should do the same. *See Alexander v. Chattahoochee*

*Valley Cmty. Coll.*, 325 F. Supp. 2d 1274, 1295-96 (M.D. Ala. 2004) (dismissing individual capacity suit where the result, if plaintiff prevailed, would be that the court would have to interfere in "the management of a state institution").

Further, Lane has not met his burden of showing that Franks' actions violated clearly established law. *See Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).   Namely, Lane has not shown that it was clearly established at the time Franks terminated Lane that testimony pursuant to a subpoena is <u>always</u> protected. Lane misconstrues the holding of *Martinez v. City of Opa-Locka*, 971 F.2d 708 (11th Cir. 1992).  The Eleventh Circuit in *Martinez* did not hold that testimony at judicial proceedings, pursuant to subpoena, is protected speech. (*See* Doc. 38, p.41.)  Rather, it held that testimony pursuant to subpoena in that particular case was protected speech. *See Martinez*, 971 F.2d at 712.  Six years later, the Court found the exact opposite. *See Morris v. Crow*, 142 F.3d 1379, 1382-83 (11th Cir. 1998).  The fact that Lane argues a discrepancy in the case law as to whether such testimony always constitutes protected speech shows that this is not a clearly established issue, and Franks is thus entitled to qualified immunity. *See Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1269-73 (11th Cir. 2003); *Worley v. City of Lilburn*, 408 F. App'x 248, 253 (11th Cir. 2011) (affirming summary judgment for defendant on qualified immunity grounds because plaintiff could not "show that he had a clearly established right not to receive an unfavorable

performance evaluation that still resulted in a raise or not to be reassigned to work he had previously done, because it was not clearly established at the time [defendant] committed these acts that they constituted adverse employment actions"); *see also Foy*, 94 F.3d at 1534.

Franks is also immune and Lane's § 1983 claim against him is due to be dismissed because Lane does not rebut that, even assuming that Franks did act in part with retaliatory intent, his actions were also motivated in part by lawful considerations. *See, e.g., Stanley v. City of Dalton*, 219 F.3d 1280, 1296 (11th Cir. 2000); *Ham v. City of Atlanta, Ga.*, 386 F. App'x 899, 906 (11th Cir. 2010). Lane makes the conclusory statement that this "is a jury question." (Doc. 38, pp. 41-42). However, this superficial analysis is insufficient to oppose summary judgment, especially in the face of Franks' testimony otherwise. (*See, e.g.*, Franks Dep. 32:10-11; *see also* Doc. 34, ¶ 39) (establishing that Franks was motivated, at least in part, by financial considerations); *Stanley*, 219 F.3d at 1296 ("[T]he presence of a jury issue about a defendant's improper intent <u>does not</u> . . . preclude qualified immunity.") (emphasis added); *see also* Fed. R. Civ. P. 56(c)(1).

**VI.    Lane was not speaking as a citizen on a matter of public concern.**

Lane fails to satisfy the threshold prong of the First Amendment analysis that he was (1) speaking as a citizen (2) on a matter of public concern. *Vila v. Padrón*, 484 F.3d 1334, 1339 (11th Cir. 2007). These are two separate analyses,

*see generally Garcetti v. Ceballos*, 547 U.S. 410 (2006), and he must satisfy both. *See D'Angelo v. Sch. Bd. of Polk County*, 497 F.3d 1203, 1208-10 (11th Cir. 2007).

Lane argues that he can prove a *prima facie* case because he was testifying on a matter of public concern. (*See* Doc. 38, p.28). Even if true, this argument ignores the fact that Lane was not testifying as a citizen. Lane's argument that the fact "[t]hat Lane was called to testify to his personal knowledge he acquired as a result of his employment is irrelevant to the analysis" is unsupported by any case law. (*See id.*) That fact is both relevant and dispositive. *See, e.g., Abdur-Rahman v. Walker*, 567 F.3d 1278, 1282-86 (11th Cir. 2009); *Vila*, 484 F.3d at 1339-40.

Further, as in *Morris*, here, there is no evidence that Lane was testifying <u>except</u> pursuant to subpoena, and summary judgment is also due to be granted on that ground. (*See* Doc. 34, ¶ 15); *see Morris*, 142 F.3d at 1382-83.

## VII.   Lane fails to present any admissible evidence – much less substantial evidence – of causation.

Lane does not challenge that he cannot state a retaliation claim with respect to his February 2009 testimony. (*See* Doc. 34, pp. 22-23.) Therefore, the only issue in this action is whether Lane was terminated on account of his testimony in August 2008, over four months prior to his January 2009 termination. Lane had the burden to prove, by substantial evidence, that his August 2008 testimony "played a substantial or motivating role in" his termination. *See Vila*, 484 F.3d at 1339. Lane's conclusory and speculative allegations about Paul Hubbert are

insufficient to meet this burden, and summary judgment is now due to be granted in favor of Defendants. *See, e.g., Smith v. Fla. Dep't of Corr.*, 375 F. App'x 905, 910-11 (11th Cir. 2010) (conclusory and speculative allegations of a retaliatory motive are insufficient to state a First Amendment retaliation claim); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("'[U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'") (citation omitted) (emphasis in original); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("'[C]onclusory allegations without specific supporting facts have no probative value.'") (citation omitted).

Lane has abandoned any claim that his termination was the result of a conspiracy between Franks, Schmitz, and/or Graham. (*See* Doc. 34, ¶¶ 69-71, 73-74, 76-78, left undisputed in Lane's opposition brief.) He admits that his only allegations of retaliation relate to that non-existent conspiracy, but then "clarifies" that he "is not limited to the allegations in his complaint." (*See* Doc. 38, pp. 4-5, ¶¶ 55, 69-71.) However, Lane does not cite to any of his testimony to show that his theory that he was terminated due to a conspiracy between Franks, Schmitz, and/or Graham is not his only theory as to why he was terminated. (*See id.*); *see* Fed. R. Civ. P. 56.

Instead, his new theory, never espoused until now, is that "[a] jury could easily infer that Paul Hubbert instructed or suggested that Franks should terminate Lane . . . ."[4] (Doc. 38, p.5, ¶ 72.)  This Court should disregard this theory, raised for the first time in response to summary judgment. *See, e.g., Cruz v. Advance Stores Co.*, 2012 WL 423342, at *3 (S.D. Fla. Feb. 10, 2012) ("[A] party may not raise a new theory for the first time in response to a summary judgment motion. . . . Therefore, Plaintiff's new theories are not properly before the Court.").

Even so, this after-the-fact theory does not pass summary judgment muster. None of the testimony cited (*see* Doc. 38, p.5, ¶ 72) links Hubbert to Franks' termination decision, but is testimony about conversations between Hubbert and Franks regarding C.I.T.Y. in general or about Hubbert's relationship to Schmitz, with no mention of Lane whatsoever.  The only shred of evidence that Lane presents that Hubbert had anything to do with Lane's termination is that Franks does not remember if he had <u>any</u> discussions with Hubbert about Lane, not just about the termination.[5] (*See* Doc. 38, pp. 21-22, ¶ 89.)  However, when asked specifically whether he had ever talked to Hubbert about his termination decision, <u>Franks testified unequivocally that he did not</u>. (Franks Dep. 36:16-18; *see also*

---

[4] Notably, Lane did not mention Hubbert in his Complaint with respect to any allegations related to his termination (*see, e.g.*, Am. Compl. ¶¶ 42-43, 59) nor did he mention Hubbert's name even once in his deposition.

[5] And, even taking as true Lane's unsupported allegation that Hubbert did instruct Franks to terminate Lane, summary judgment would still be due to be granted because that fact alone would not show that Franks terminated Lane on account of any protected speech.  It would just show that Franks terminated Lane because Hubbert told him to do so.

*supra*, pp. 6-7, ¶ 89); *see Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (stating, in the context of a First Amendment retaliation claim, that "[w]here causation is lacking, an employee's claim of retaliatory discharge must fail"). There is no genuine dispute that Hubbert instructed or suggested that Franks fire Lane on account of his testimony at Schmitz's trial. *See Riviera Beach v. That Certain Unnamed Gray, Two-Story Vessel Approx. Fifty-Seven Feet in Length*, 649 F.3d 1259, 1272 (11th Cir. 2011) ("[C]ircumstantial evidence must do more than simply raise some eyebrows; it must be sufficient to raise a jury question.") (stating that plaintiff's speculative evidence was "hardly enough to raise a *genuine* issue of material fact") (emphasis in original).

Likewise, Lane's argument that "the fact that Franks had recently moved back to Alabama could support a motive of Franks' need to buddy up quickly" (Doc. 38, p.39), is unsupported by any legal or factual authority.[6] *See, e.g., Riviera Beach*, 649 F.3d at 1272; *Smith*, 375 F. App'x at 910-11; *Cordoba*, 419 F.3d at 1181; *Leigh*, 212 F.3d at 1217; *see also* Fed. R. Civ. P. 56(c)(1). Lane's argument that "Franks decided to terminate Lane to curry favor with Hubbert and his friends in the legislature" (Doc. 38, p.35) is pure speculation. *See, e.g., Riviera Beach*, 649 F.3d at 1272; *Smith*, 375 F. App'x at 910-11; *Cordoba*, 419 F.3d at 1181; *Leigh*, 212 F.3d at 1217.

---

[6] It also misstates record evidence, as there is no dispute that Franks moved back to Alabama in January 2008 (*see* Doc. 34, ¶ 11) but did not terminate Lane until over a year later.

To overcome summary judgment, Lane had to do more than quarrel with Defendants' business decisions related to C.I.T.Y. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). Defendants could have fired and not re-hired Lane for a good reason, bad reason, or no reason at all, so long as it was not an illegal reason. *See Abel v. Dubberly*, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (the Court does not "sit as a super-personnel department t[o] reexamine[] an entity's business decisions"). Lane agrees that Franks was sure that Lane was not hired under a six-month probationary period and that CACC's three-year guidelines thus applied. (Doc. 38, p.18, ¶ 69.) That admission is fatal to his retaliation claim because it shows that Franks' belief that Lane was not probationary, even if mistaken (as Lane argues), was the reason Franks did not rescind his termination, not anything on account of Lane's testimony at Schmitz's August trial. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (Courts are "not interested in whether the conclusion [of the employer wa]s a correct one, but whether it [wa]s an honest one.").

Lane's disagreement with Franks' decision to hire Palmer (*see* Doc. 38, p.40) is not enough to overcome summary judgment, either. Lane does not dispute that the hiring of Palmer saved C.I.T.Y. money, but simply believes that he should

18

not have been fired in the process.[7]   Again, Lane's disagreement with Franks'

decisions and subjective beliefs that he was retaliated against do not warrant denial

of summary judgment. (*See supra*, pp. 4-5 & Sec. II); *see Riviera Beach*, 649 F.3d

at 1272; *Wilson*, 376 F.3d at 1088; *Johnson*, 2009 WL 4067220, at *10; *Sabatier*,

2008 WL 108796, at *13.

Finally, Lane's performance is not a disputed issue. (*See* Doc. 38, pp. 36-

37.)   There is no genuine dispute that Franks terminated Lane for financial reasons.

And, again, Lane's disagreement and subjective beliefs regarding Franks' reasons

for firing and not re-hiring him are insufficient to show a genuine issue of material

fact that Franks terminated Lane, at least in part, for financial reasons. *See Riviera*

*Beach*, 649 F.3d at 1272; *Wilson*, 376 F.3d at 1088; *see also Vila*, 484 F.3d at

1339; *Johnson*, 2009 WL 4067220, at *10; *Sabatier*, 2008 WL 108796, at *13.

**VIII. There is no genuine issue of material fact regarding the measure of Lane's damages, if any.[8]**

Other than the argument of Lane's counsel that C.I.T.Y. was "re-formed"

(*supra*, p.7, ¶¶ 93-94), which argument is not evidence, *see Skyline Corp. v.*

*N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980), there is no evidence that C.I.T.Y.

---

[7] Lane's speculation as to why Palmer allegedly changed his testimony (which is itself a misstatement, as discussed above (*supra*, p.7, ¶ 92)) is likewise insufficient to meet his summary judgment burden. *See, e.g., Riviera Beach*, 649 F.3d at 1272; *Smith*, 375 F. App'x at 910-11; *Cordoba*, 419 F.3d at 1181; *Leigh*, 212 F.3d at 1217. Lane has cited to no evidence (and there is none) that Palmer had anything to do with Franks' decisions relating to Lane. (*See, e.g.*, Franks Dep. 56:18-23 (no one instructed Franks to fire Lane or suggested to Franks that Lane be fired)).

[8] This Court need not reach the issue of Lane's damages, since, as shown in Defendants' summary judgment filings, Lane's claims are due to be dismissed.

remained in existence after September 2009.[9]  As such, Lane is prohibited from recovering damages after that date. *See, e.g.*, *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991).

## IV.    Conclusion.

For all the reasons discussed herein and in Defendants' previous summary judgment filings, summary judgment should be entered in Defendants' favor on all of Lane's claims. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . , and we think [the rule] should be interpreted in a way which allows it to accomplish this purpose.").

/s/ Jennifer S. Morgan
MARK T. WAGGONER
STEPHEN N. FITTS, III
JENNIFER S. MORGAN
*Attorneys for Defendants Central Alabama Community College and Dr. Steve Franks*

OF COUNSEL:
HAND ARENDALL LLC
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama  35203
(205) 324-4400 Telephone
(205) 322-1163 Fax

---

[9] Lane does not cite any law or evidence of any legal relationship between CACC and any alleged "successor" employer.  Certainly there can be no dispute about the fact that no one was employed as part of the C.I.T.Y. Program with Defendant CACC after September 2009 and CACC had no involvement with any programs, or the employees of such programs, that were instituted by DYS.

and

HAND ARENDALL LLC
Post Office Box 123
Mobile, Alabama  36601
(251) 432-5511 Telephone
(251) 694-6375 Fax
1479791_1

## CERTIFICATE OF SERVICE

I do certify that on June 5, 2012, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system and request the Court to serve the same electronically, on the following counsel:

John Saxon, Esq.
Joseph A. Hutchings, Esq.
2119 3rd Avenue North
Birmingham, AL 35203

/s/ *Jennifer S. Morgan*
OF COUNSEL

21